# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

**FILED**

DEC 1 6 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MICHAEL H. VECHERY
9919 MacArthur Boulevard
Bethesda MD 20817

        Plaintiff

v.

BONNEVILLE INTERNATIONAL
 CORPORATION
SERVE: Corporation Service Company
1090 Vermont Avenue, NW
Washington, DC 20005

and

BASEBALL EXPOS, L.P.
SERVE: CT Corporation System
1015 15th Street, NW
Washington, DC 20005

        Defendants

CASE NUMBER  1:05CV02418

JUDGE: Rosemary M. Coll...

DECK TYPE: General Civil

DATE STAMP: 12/16/2005

JURY ACTION

---

## COMPLAINT FOR DAMAGES

Plaintiff Michael H. Vechery by and through undersigned counsel hereby alleges and states the following:

### Nature of this action

1. This is an action for breach of contract, violation of the covenant of good faith and fair dealing and intentional interference with contractual rights. The Plaintiff seeks compensatory and general damages as well punitive damages from the Defendants, plus costs of this action.

### Jurisdiction/Venue

2. Jurisdiction of this Court is founded on Title 28 U.S.C § 1332; the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

3. Venue is proper because the acts and things complained about occurred in the District of Columbia.

1

Parties

4. Plaintiff Michael H. Vechery is a licensed real estate agent and financial consultant and a citizen of the State of Maryland residing at 9919 MacArthur Boulevard, Bethesda, MD 20817.

5. Defendant Bonneville International Corporation (hereinafter sometimes referred to as Defendant Bonneville) is a media company organized and existing under the laws of the State of Utah and the District of Columbia with its principal office located at 55 North 300 West, Salt Lake City, UT 84180 and it owns, manages and operates among other things, radio operations in the District of Columbia including WTOP, WFED(1050 AM) and Internet properties such as wtopnews.com and www.federalnewsradio.com.

6. Defendant Baseball Expos, L.P. is a partnership organized and existing under the laws of the State of Delaware and the District of Columbia with its principal place of business located in New York, NY and it owns, manages and operates a baseball team in the District of Columbia known as the Washington Nationals.

Factual Allegations

7. In December, 2004, the Plaintiff and Defendant Bonneville entered into an agreement whereby the Plaintiff purchased or agreed to purchase two(2) 1 hour- blocked weekend programs on Defendant Bonneville's WFED(Federal News Radio 1050 AM) based in Washington, DC.

8. The first program the Plaintiff purchased was a blocked one(1)-hour program on said radio station to air on Sundays from 12:00 Noon to 1:00 p.m. beginning January 16, 2005 through December 31, 2006 at $750.00 per program hour, totaling $76, 500.00 over the course of 102 weeks(two years).

9. On or about December 21, 2004, the Plaintiff paid $2,250.00 to Defendant Bonneville on account on said program.

10. On Sunday, January 16, 2005, said program was first aired on WFED for one(1) hour beginning at 12:00 p.m. to 1:00 p.m.

11. On or about February 1, 2005, the Plaintiff made a second payment in an amount of

$3,000.00 on account thereof to  Defendant Bonneville.

12. Plaintiff and Defendant Bonneville also agreed that the Plaintiff would have an option to purchase a blocked hour on Saturdays from 1:00 p.m. to 2:00 p.m. for a repeat of the Sunday program on Saturdays at $750.00 per program hour, beginning March 5, 2005 through December 31, 2006.

13. As  promotional support to secure the Plaintiff to exercise his option, Defendant Bonneville agreed to repeat the Plaintiff's program for the first six(6) weeks beginning Saturday, January 22, 2005 at no additional charge and it also provided the Plaintiff a first right of refusal in case Defendant Bonneville had another purchaser for the Saturday time slot.

14. On or about February 18, 2005, the Plaintiff exercised his option and purchased one(1) blocked hour on Saturdays from 1:00 p.m. to 2:00 p.m. for a repeat of the Sunday program on Saturdays beginning March 5, 2005 through December 31, 2006 on the same terms and conditions as the Saturday program.

15.  The agreement between the Plaintiff and Defendant Bonneville provided that the Plaintiff had sole and exclusive right and control over the content of the radio programs which could vary outside real estate; Defendant Bonneville also agreed not to place any other commercial or real estate programs adjacent to the Plaintiff's programs.

16. Defendant Bonneville represented to the Plaintiff that its relationship with him was one of a true partnership and that Bonneville would assist the Plaintiff in building and growing his audience; in aid thereof, Defendant Bonneville  agreed and provided promotional spots for the Plaintiff's program on its network of assets including  WFED(1050 AM), WTOP News and Wtopnews.com.  Defendant Bonneville also agreed and provided the Plaintiff dedicated web page housed on wtopnews.com and linked to the WFED website.

17. On his part, the Plaintiff did everything that was required to be done or not done in accordance with the agreement between him and Defendant Bonneville.

18. On or about February 17, 2005, the Plaintiff learned that Defendant Baseball Expos, L.P. had

a signed a contract with Defendant Bonneville to broadcast the Washington Nationals baseball games on WFED beginning at 1:00 p.m. on Sundays for two seasons; at about the same time, the Plaintiff was requested to meet with WFED to discuss ceding 15 minutes of his purchased air time for use by the Washington Nationals for its pregame show.

19. The Plaintiff and Defendant Bonneville met on or about February 18, 2005 to discuss their request for the Plaintiff to cede 15 minutes of his purchased air time but the meeting did not resolve the matter.

20. On or about Sunday, February 20, 2005, the Director of Media Relations for the Washington Nationals was invited by the Plaintiff and he appeared as a guest on Plaintiff's show to discuss spring training and related baseball matters.

21. At their meeting, The Plaintiff advised said Director of Media Relations that he planned on visiting Washington Nationals spring training camp in Florida on February 22, 2005 and said Director of Media Relations in turn told him that he would provide two media passes for the Plaintiff.

22. On February 23, 2005, the Plaintiff received two media passes from Defendant Baseball Expos, L.P. for use by him and his friend at the spring training camp in Florida; they used the passes to enter a press briefing that morning given by Frank Robinson, the Manager of the Washington Nationals.

23. During the press briefing, the Plaintiff asked a question regarding the impact of the use of steroids on the baseball record of some players and Frank Robinson snapped back, "No Comment"; the Plaintiff was subsequently advised that Frank Robinson had two days earlier banned discussions of steroids at his press briefings.

24. About an hour later, the Plaintiff was approached by security for Defendant Baseball Expos, L.P. and told to step back the batter's box screen when he and others were filming spring training morning practice..

25. During the course of the day on February 23, 2005, the Plaintiff met with Defendant Baseball

-4-

Expos, L.P. 'S  Promotions Director-Florida Operations as well as its Vice-President for promotions-Florida Operations to explore advertisement opportunities with the Washington Nationals.

26. At said meeting, the Plaintiff and Defendant Baseball Expos, L.P. agreed that the plaintiff would purchase the advertisement to be placed in the 3rd base visitor dugout for a period of 5 years at $5,000.00 per year, terminable with 2 years notice by the Plaintiff; said parties also agreed that the Plaintiff purchase one(1) page advertisement in  the spring training schedule for a period of five years at $1,250.00 per year, terminable with 2 years notice by the Plaintiff.

27. Later that day, the Plaintiff was filming an autographed bat on the  the front door of the office of the General manager of Defendant Baseball Expos, L.P. when a member of said defendant's security again  told him, "You can't be up here and you cannot film that."

28. The total purchase of advertisement by the Plaintiff for Spring, 2005 was $6,250.00 and said parties agreed that the Plaintiff would make five(5) monthly payments; at said  meeting,  the Plaintiff made the first instalment payment of $1,250.00 to  Defendant Baseball Expos, L.P.

29. The Plaintiff and Defendant Baseball Expos, L.P. agreed to formally sign a written lease reflecting their agreement later on February 23, 2005 or the next day; the Plaintiff also commenced the arrangements to provide said defendant the design required to manufacture the signage for placement before the first exhibition game.

30. On February 24, 2005 at approximately 8:25 a.m., the Plaintiff arrived at Defendant Baseball Expos' spring training stadium for the manager's morning  press briefing; a few moments later, the security for Defendant Baseball Expos, L.P. approached and asked to step outside, then told the Plaintiff to return the press passes and that the advertisement contract with the Washington Nationals has been canceled and you will credited for the payment received.  The Plaintiff requested to know the reasons for the action and he was told: "You are not a journalist. You pay for airtime".

31. Approximately 30 minutes later, Defendant Bonneville  by and through the Manager of its

WFED station contacted the Plaintiff and advised him that it would cancel its agreement with the Plaintiff pursuant to a provision in the contract ostensibly because the Plaintiff had been affiliating himself with WFED.

32. On February 24, 2005 at approximately 4:00 p.m., Defendant Bonneville by and through an account manager at WFED Radio Station told the Plaintiff that it had information that the Plaintiff caused a "ruckus" at Washington Nationals spring training and that the Washington Nationals called WFED and asked it to "get rid of" the Plaintiff.

33. On February 27, 2005, the Plaintiff was taping his program and spent the first five minutes discussing some of the events that had occurred with the Defendants when his program was taken off the air for the balance of the show.

34. On February 28, 2005, Defendant Bonneville terminated the contract with the Plaintiff with immediate effect.

<u>Causes of Action</u>

### COUNT ONE
(Breach of Contract)

35. Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 34 and incorporates the same here by reference as though they are fully set forth here.

36. In terminating the contract with the Plaintiff as it did, Defendant Bonneville breached its contract with the Plaintiff for which damages are proper.

37. As a direct and proximate result of the wrongful acts of Defendant Bonneville, the Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, all to his damage.

### COUNT TWO
(Violation of the Covenant of Good Faith and Fair Dealing)

38. Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 34, 36 and 37 and

incorporates the same here by reference as though they are fully set forth here.

39. Plaintiff's contract with Defendant Bonneville contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the benefits of the contract.

40. In doing the acts and things complained about, Defendant Bonneville violated the implied covenant of good faith and fair dealing for the purpose of depriving the Plaintiff his rights and benefits under the contract with said defendant.

41. Furthermore, the conduct of Defendant Bonneville was wilful, malicious and a wanton disregard for the rights and privileges of the Plaintiff for which exemplary damages are proper.

42. As a direct and proximate result of the wrongful acts of Defendant Bonneville, Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, severe emotional distress, all to his damage

## COUNT THREE
(Intentional interference with contractual rights)

43. Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 34, 36, 37 and 39 through 42 and incorporates the same here by reference as though they are fully set forth here.

44. In doing the acts and wrongs complained about, Defendant Baseball Expos, L.P. intentionally interfered with the Plaintiff's contract with Defendant Bonneville causing its breach by said defendant.

45. As a direct and proximate result of the wrongful acts of Defendant Baseball Expos, L.P., Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, all to his damage.

46. Furthermore, the conduct of Defendant Baseball Expos, L.P. was wilful, malicious and a wanton disregard for the rights and privileges of the plaintiff for which exemplary damages are proper.

<u>Relief Sought</u>

**WHEREFORE** Plaintiff demands judgment as follows:

(a) Compensatory and general damages against the defendants, jointly and severally, in the amount of $750,000.00;

(b) Punitive damages against the defendants jointly and severally in the amount of $2,000,000.00;

(c) For costs of this action and

(d) For such other relief as the Court may deem just and proper.

Respectfully Submitted,

Boniface K. Cobbina, P.C.

By: _Boniface K. Cobbina_
Boniface K. Cobbina, Esquire
DC Bar No. 347757
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036

(202) 463-6900

**<u>JURY DEMAND</u>**

Plaintiff demands trial by jury as to all issues so triable.

_Boniface K. Cobbina_
Boniface K. Cobbina