**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | |
|---|---|
| **MICHAEL H. VECHERY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 1:05cv02418 (RMC)** |
| v. ) | |
| ) | |
| **BONNEVILLE INTERNATIONAL** ) | |
| **CORPORATION, and** ) | |
| **BASEBALL EXPOS, L.P.,** ) | |
| ) | |
| Defendants. ) | |

**ANSWER**

Defendant Bonneville International Corporation ("Defendant"), through its undersigned counsel, for its Answer in this case states as follows:

**Nature of this Action**

**Complaint Paragraph No. 1**: This is an action for breach of contract, violation of the covenant of good faith and fair dealing and intentional interference with contractual rights. The Plaintiff seeks compensatory and general damages as well as punitive damages from the Defendants, plus costs of this action.

**Answer Paragraph No. 1**: The complaint speaks for itself.

**Jurisdiction/Venue**

**Complaint Paragraph No. 2**: Jurisdiction of this Court is founded on Title 28 U.S.C § 1332; the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

**Answer Paragraph No. 2**: As to the allegations and claims against it, Defendant denies that the amount in controversy exceeds $75,000.

**Complaint Paragraph No. 3**: Venue is proper because the acts and things complained about occurred in the District of Columbia.

**Answer Paragraph No. 3**: Venue is admitted.

## Parties

**Complaint Paragraph No. 4:** **Plaintiff Michael H. Vechery is a licensed real estate agent and financial consultant and a citizen of the State of Maryland residing at 9919 MacArthur Boulevard, Bethesda, MD 20817.**

**Answer Paragraph No. 4**: Upon information and belief, the allegations of Paragraph 4 are admitted.

**Complaint Paragraph No. 5:** **Defendant Bonneville International Corporation (hereinafter sometimes referred to as Defendant Bonneville) is a media company organized and existing under the laws of the State of Utah and the District of Columbia with its principal office located at 55 North 300 West, Salt Lake City, UT 84180 and it owns, manages and operates among other things, radio operations in the District of Columbia including WTOP, WFED (1050 AM) and Internet properties such as wtopnews.com and www.federalnewsradio.com.**

**Answer Paragraph No. 5**: The allegations of Paragraph 5 are admitted to be substantially correct.

**Complaint Paragraph No. 6:** **Defendant Baseball Expos, L.P. is a partnership organized and existing under the laws of the State of Delaware and the District of Columbia with its principal place of business located in New York, NY and it owns, manages and operates a baseball team in the District of Columbia known as the Washington Nationals.**

**Answer Paragraph No. 6**: Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 6 and the same are hereby denied.

## Factual Allegations

**Complaint Paragraph No. 7:** **In December, 2004, the Plaintiff and Defendant Bonneville entered into an agreement whereby the Plaintiff purchased or agreed to purchase two (2) 1 hour- blocked weekend programs on Defendant Bonneville s WFED (Federal News Radio 1050 AM) based in Washington, DC.**

**Answer Paragraph No. 7**: The contract speaks for itself and included a four-week termination clause.

**Complaint Paragraph No. 8:** **The first program the Plaintiff purchased was a blocked one(l)-hour program on said radio station to air on Sundays from 12:00 Noon to 1:00 p.m. beginning January 16, 2005 through December 31, 2006 at $750.00 per program hour, totaling $76,500.00 over the course of 102 weeks (two years).**

**Answer Paragraph No. 8**:  Admitted that on December 21, 2004, Plaintiff and Defendant entered into a contract for Plaintiff to purchase an hour program to air on 1050 AM from noon to 1 pm every Sunday from 1/16/05 to 12/31/06.  The cost was $750 per week for two years for a total of $76,500.  The remaining allegations of Paragraph 8 are denied.

**Complaint Paragraph No. 9:  On or about December 21, 2004, the Plaintiff paid $2,250.00 to Defendant Bonneville on account on said program.**

**Answer Paragraph No. 9**:  The allegations of Paragraph 9 are admitted.

**Complaint Paragraph No. 10:  On Sunday, January 16, 2005, said program was first aired on WFED for one (l) hour beginning at 12:00 p.m. to 1:00 p.m.**

**Answer Paragraph No. 10**:  The allegations of Paragraph 10 are admitted.

**Complaint Paragraph No. 11:  On or about February 1, 2005, the Plaintiff made a second payment in an amount of $3,000.00 on account thereof to Defendant Bonneville.**

**Answer Paragraph No. 11**:  The allegations of Paragraph 11 are denied.

**Complaint Paragraph No. 12:  Plaintiff and Defendant Bonneville also agreed that the Plaintiff would have an option to purchase a blocked hour on Saturdays from 1:00 p.m. to 2:00 p.m. for a repeat of the Sunday program on Saturdays at $750.00 per program hour, beginning March 5, 2005 through December 31, 2006.**

**Answer Paragraph No. 12**:  The allegations of Paragraph 12 are denied.

**Complaint Paragraph No. 13:  As promotional support to secure the Plaintiff to exercise his option, Defendant Bonneville agreed to repeat the Plaintiff s program for the first six (6) weeks beginning Saturday, January 22, 2005 at no additional charge and it also provided the Plaintiff a first right of refusal in case Defendant Bonneville had another purchaser for the Saturday time slot.**

**Answer Paragraph No. 13**:  Admitted that, as part of the December 21 agreement, Defendant agreed to repeat without charge the previous Sunday show on the following Saturday and to provide Plaintiff the right of first refusal to purchase the Saturday time if someone else offered to buy the time.  The remaining allegations of Paragraph 13 are denied.

**Complaint Paragraph No. 14:  On or about February 18,2005, the Plaintiff exercised his option and purchased one (l) blocked hour on Saturdays from 1:00 p.m. to**

3

**2:00 p.m. for a repeat of the Sunday program on Saturdays beginning March 5, 2005 through December 31, 2006 on the same terms and conditions as the Saturday program.**

 **Answer Paragraph No. 14**:  The allegations of Paragraph 14 are denied.

 **Complaint Paragraph No. 15:  The agreement between the Plaintiff and Defendant Bonneville provided that the Plaintiff had sole and exclusive right and control over the content of the radio programs which could vary outside real estate; Defendant Bonneville also agreed not to place any other commercial or real estate programs adjacent to the Plaintiff s programs.**

 **Answer Paragraph No. 15**:  The allegations of Paragraph 15 are admitted.

 **Complaint Paragraph No. 16:  Defendant Bonneville represented to the Plaintiff that its relationship with him was one of a true partnership and that Bonneville would assist the Plaintiff in building and growing his audience; in aid thereof, Defendant Bonneville agreed and provided promotional spots for the Plaintiff s program on its network of assets including WFED (1050 AM), WTOP News and Wtopnews.com. Defendant Bonneville also agreed and provided the Plaintiff dedicated web page housed on wtopnews.com and linked to the WFED website.**

 **Answer Paragraph No. 16**:  The allegations of Paragraph 16 are admitted, except that

Defendant was not, and did not agree to be, Plaintiff's "partner" in any legal sense.

 **Complaint Paragraph No. 17:  On his part, the Plaintiff did everything that was required to be done or not done in accordance with the agreement between him and Defendant Bonneville.**

 **Answer Paragraph No. 17**:  The allegations of Paragraph 17 are denied.

 **Complaint Paragraph No. 18:  On or about February 17, 2005, the Plaintiff learned that Defendant Baseball Expos, L.P. had signed a contract with Defendant Bonneville to broadcast the Washington Nationals baseball games on WFED beginning at 1:00 p.m. on Sundays for two seasons; at about the same time, the Plaintiff was requested to meet with WFED to discuss ceding 15 minutes of his purchased air time for use by the Washington Nationals for its prename show.**

 **Answer Paragraph No. 18**:  Admit that WFED officials requested a meeting with

Plaintiff to discuss his giving up nine minutes of his time on days when WFED broadcast

Washington Nationals baseball games.  Defendant is without sufficient information to form a

belief as to the truth of the remaining allegations of Paragraph 18 and the same are denied.

**Complaint Paragraph No. 19:** The Plaintiff and Defendant Bonneville met on or about February 18, 2005 to discuss their request for the Plaintiff to cede 15 minutes of his purchased air time but the meeting did not resolve the matter.

**Answer Paragraph No. 19**: The allegations of Paragraph 19 are admitted except that Defendant asked Plaintiff to cede nine minutes of air time when Nationals games were broadcast.

**Complaint Paragraph No. 20:** On or about Sunday, February 20, 2005, the Director of Media Relations for the Washington Nationals was invited by the Plaintiff and he appeared as a guest on Plaintiff's show to discuss spring training and related baseball matters.

**Answer Paragraph No. 20**: The allegations of Paragraph 20 are admitted.

**Complaint Paragraph No. 21:** At their meeting, The Plaintiff advised said Director of Media Relations that he planned on visiting Washington Nationals spring training camp in Florida on February 22, 2005 and said Director of Media Relations in turn told him that he would provide two media passes for the Plaintiff.

**Answer Paragraph No. 21**: Admitted that during his February 20, 2005 show, Plaintiff said to the Director of Media Relations he would travel to the Nationals training camp on February 22, 2005. The remaining allegations of Paragraph 21 are denied.

**Complaint Paragraph No. 22:** On February 23, 2005, the Plaintiff received two media passes from Defendant Baseball Expos, L.P. for use by him and his friend at the spring training camp in Florida; they used the passes to enter a press briefing that morning given by Frank Robinson, the Manager of the Washington Nationals.

**Answer Paragraph No. 22**: Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 22 and the same are hereby denied.

**Complaint Paragraph No. 23:** During the press briefing, the Plaintiff asked a question regarding the impact of the use of steroids on the baseball record of some players and Frank Robinson snapped back, "No Comment"; the Plaintiff was subsequently advised that Frank Robinson had two days earlier banned discussions of steroids at his press briefings.

**Answer Paragraph No. 23**: Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 23 and the same are hereby denied.

5

**Complaint Paragraph No. 24:**  About an hour later, the Plaintiff was approached by security for Defendant Baseball Expos, L.P. and told to step back the batter s box screen when he and others were filming spring training morning practice.

**Answer Paragraph No. 24**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 24 and the same are hereby denied.

**Complaint Paragraph No. 25:**  During the course of the day on February 23, 2005, the Plaintiff met with Defendant Baseball Expos, L.P. s Promotions Director-Florida Operations as well as its Vice-President for promotions-Florida Operations to explore advertisement opportunities with the Washington Nationals.

**Answer Paragraph No. 25**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 25 and the same are hereby denied.

**Complaint Paragraph No. 26:**  At said meeting, the Plaintiff and Defendant Baseball Expos, L.P. agreed that the plaintiff would purchase the advertisement to be placed in the 3rd base visitor dugout for a period of 5 years at $5,000.00 per year, terminable with 2 years notice by the Plaintiff; said parties also agreed that the Plaintiff purchase one (1) page advertisement in the spring training schedule for a period of five years at $1,250.00 per year, terminable with 2 years notice by the Plaintiff.

**Answer Paragraph No. 26**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 26 and the same are hereby denied.

**Complaint Paragraph No. 27:**  Later that day, the Plaintiff was filming an autographed bat on the front door of the office of the General manager of Defendant Baseball Expos, L.P. when a member of said defendant s security again told him,  You can t be up here and you cannot film that.

**Answer Paragraph No. 27**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 27 and the same are hereby denied.

**Complaint Paragraph No. 28:**  The total purchase of advertisement by the Plaintiff for Spring, 2005 was $6,250.00 and said parties agreed that the Plaintiff would make five (5) monthly payments; at said meeting, the Plaintiff made the first installment payment of $1,250.00 to Defendant Baseball Expos, L.P.

**Answer Paragraph No. 28**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 28 and the same are hereby denied.

**Complaint Paragraph No. 29**:  The Plaintiff and Defendant Baseball Expos, L.P. agreed to formally sign a written lease reflecting their agreement later on February 23, 2005 or the next day; the Plaintiff also commenced the arrangements to provide said defendant the design required to manufacture the signage for placement before the first exhibition game.

**Answer Paragraph No. 29**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 29 and the same are hereby denied.

**Complaint Paragraph No. 30**:  On February 24, 2005 at approximately 8:25 a.m., the Plaintiff arrived at Defendant Baseball Expos spring training stadium for the manager s morning press briefing; a few moments later, the security for Defendant Baseball Expos, L.P. approached and asked to step outside, then told the Plaintiff to return the press passes and that the advertisement contract with the Washington Nationals has been canceled and you will credited for the payment received.  The Plaintiff requested to know the reasons for the action and he was told:  You are not a journalist. You pay for airtime  .

**Answer Paragraph No. 30**:  Defendant is without sufficient information to form a belief as to the truth of the allegations of Paragraph 30 and the same are hereby denied.

**Complaint Paragraph No. 31**:  Approximately 30 minutes later, Defendant Bonneville by and through the Manager of its WFED station contacted the Plaintiff and advised him that it would cancel its agreement with the Plaintiff pursuant to a provision in the contract ostensibly because the Plaintiff had been affiliating himself with WFED.

**Answer Paragraph No. 31**:  Admitted that on or about February, 2005 Defendant advised Plaintiff his contract would be terminated because of his inappropriate conduct at the Nationals Training Camp including his misrepresenting himself as a WFED journalist.  The remaining allegations of Paragraph 31 are denied.

**Complaint Paragraph No. 32**:  On February 24, 2005 at approximately 4:00 p.m., Defendant Bonneville by and through an account manager at WFED Radio Station told the Plaintiff that it had information that the Plaintiff caused a  ruckus  at Washington Nationals spring training and that the Washington Nationals called WFED and asked it to  get rid of   the Plaintiff.

**Answer Paragraph No. 32**:  Admitted that at some point on February 24, 2005, Defendant advised Plaintiff that it had heard that Plaintiff caused a "ruckus" at Nationals Training Camp.  The remaining allegations of Paragraph 32 are denied.

7

**Complaint Paragraph No. 33:** On February 27, 2005, the Plaintiff was taping his program and spent the first five minutes discussing some of the events that had occurred with the Defendants when his program was taken off the air for the balance of the show.

**Answer Paragraph No. 33**: Admitted that on February 27, 2005, Defendant terminated Plaintiff's program after about 30 minutes because of his inappropriate, offensive, insulting and untrue statements on the air. The remaining allegations of Paragraph 33 are denied.

**Complaint Paragraph No. 34:** On February 28, 2005, Defendant Bonneville terminated the contract with the Plaintiff with immediate effect.

**Answer Paragraph No. 34**: The allegations of Paragraph 34 are admitted.

### Causes of Action

### COUNT ONE
### (Breach of Contract)

**Complaint Paragraph No. 35:** Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 34 and incorporates the same here by reference as though they are fully set forth here.

**Answer Paragraph No. 35**: Defendant incorporates by reference the answers to Paragraphs 1 through 34.

**Complaint Paragraph No. 36:** In terminating the contract with the Plaintiff as it did, Defendant Bonneville breached its contract with the Plaintiff for which damages are proper.

**Answer Paragraph No. 36**: The allegations of Paragraph 36 are denied.

**Complaint Paragraph No. 37:** As a direct and proximate result of the wrongful acts of Defendant Bonneville, the Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, all to his damage.

**Answer Paragraph No. 37**: The allegations of Paragraph 37 are denied.

### COUNT TWO
### (Violation of the Covenant of Good Faith and Fair Dealing)

**Complaint Paragraph No. 38:** Plaintiff repeats and realleges all of the allegations of Paragraphs 1 though 34, 36 and 37 and incorporates the same here by reference as though they are fully set forth here.

**Answer Paragraph No. 38**: Defendant incorporates by reference the answers to Paragraphs 1 through 34, 36 and 37.

**Complaint Paragraph No. 39: Plaintiff s contract with Defendant Bonneville contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other part to enjoy the benefits of the contract.**

**Answer Paragraph No. 39**: The allegations of Paragraph 39 are denied.

**Complaint Paragraph No. 40: In doing the acts and things complained about, Defendant Bonneville violated the implied covenant of good faith and fair dealing for the purpose of depriving the Plaintiff his rights and benefits under the contract with said defendant.**

**Answer Paragraph No. 40**: The allegations of Paragraph 40 are denied.

**Complaint Paragraph No. 41: Furthermore, the conduct of Defendant Bonneville was willful, malicious and a wanton disregard for the rights and privileges of the Plaintiff for which exemplary damages are proper.**

**Answer Paragraph No. 41**: The allegations of Paragraph 41 are denied.

**Complaint Paragraph No. 42: As a direct and proximate result of the wrongful acts of Defendant Bonneville, Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, severe emotional distress, all to his damage.**

**Answer Paragraph No. 42**: The allegations of Paragraph 42 are denied.

### COUNT THREE
(Intentional interference with contractual rights)

**Complaint Paragraph No. 43: Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 34, 36, 37 and 39 through 42 and incorporates the same here by reference as though they are fully set forth here.**

**Answer Paragraph No. 43**: Defendant incorporates by reference the answers to Paragraphs 1 through 34, 36, 37 and 42.

**Complaint Paragraph No. 44: In doing the acts and wrongs complained about, Defendant Baseball Expos, L.P. intentionally interfered with the Plaintiff s contract with Defendant Bonneville causing its breach by said defendant.**

**Answer Paragraph No. 44**: The allegations of Paragraph 44 are denied.

**Complaint Paragraph No. 45:** As a direct and proximate result of the wrongful acts of Defendant Baseball Expos, L.P., Plaintiff has suffered and continues to suffer substantial damages to include losses in earnings, diminution in earning power and an adverse impact on his professional career, all to his damage.

**Answer Paragraph No. 45**: Upon information and belief, the allegations of Paragraph 45 are denied.

**Complaint Paragraph No. 46:** Furthermore, the conduct of Defendant Baseball Expos, L.P. was willful, malicious and a wanton disregard for the rights and privileges of the plaintiff for which exemplary damages are proper.

**Answer Paragraph No. 46**: Upon information and belief, the allegations of Paragraph 46 are denied.

### Affirmative Defenses

**First Affirmative Defense:** The complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense:** Plaintiff's claim is barred by the doctrine of estoppel, in that Plaintiff's behavior on the February 27, 2005 program, including, *inter alia*, repeated statements that he had been "screwed" and comparing the Washington Nationals to the Mafia, is the cause of Defendant's termination of Plaintiff's contract.

**Third Affirmative Defense:** Plaintiff's claim is barred by the doctrine of payment, in that Defendant made full payment on Plaintiff's claim.

**Fourth Affirmative Defense:** Plaintiff's claim is barred because he breached his contract with Defendant.

**Fifth Affirmative Defense:** Plaintiff's claim is barred because Defendant, as an FCC licensee, has full responsibility for all content that is disseminated over its broadcast signal. Plaintiff's February 27, 2005 broadcast included, *inter alia*, repeated statements that Plaintiff had been "screwed" and compared the Washington Nationals to the Mafia. These statements

exposed Defendant to liability, and the Defendant licensee exercised its control over its station's programming. *See Mr. Steve Bridges*, 9 FCC Rcd 1681 (MMB 1994) (a licensee is ultimately responsible for the programming it broadcasts, regardless of the source of the programming); *Community Broadcasters, Inc.*, 55 FCC 2d 28, 35 (1975) (a licensee is responsible for material broadcast over its station and may not avoid liability for a violation by pleading ignorance of what was broadcast).

Wherefore Defendant seeks the following relief:

(a) Dismissal of Plaintiff's Complaint with prejudice;

(b) Award Defendant its costs and attorney's fees for defending this action; and

(c) Such further relief as is just and proper.

Dated this 26th day of January, 2006.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: __/s/_____
Richard L. Cys (DC Bar # 087536)
Amber L. Husbands (DC Bar # 481565)
1500 K Street, N.W., Suite 450
Washington, D.C. 20005-1272
(202) 508-6600

Counsel for Bonneville International Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2006, a copy of the foregoing Answer was served electronically and by first-class mail, postage prepaid, upon:

>Boniface K. Cobbina, Esq.
>1150 Connecticut Avenue, NW
>Suite 900
>Washington, DC  20036

>Counsel for Plaintiff

>Paul R. Monsees, Esq.
>Foley & Lardner
>3000 K Street, NW
>Suite 500
>Washington, DC  20007
>pmonsees@foley.com

>Counsel for Baseball Expos, L.P.

                                    /s/
                              Richard L. Cys